IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| OCTAGON, INC.<br>7950 Jones Branch Drive, Suite 700N<br>McLean, VA 22102<br><br>        Plaintiff,<br><br>v.<br><br>ALEXANDER SOHAILI,<br>700 Main Street, Unit 7<br>Los Angeles, CA 90291<br><br>        Defendant. | Civil Action No.: |

**COMPLAINT**

Plaintiff Octagon, Inc. ("*Octagon*"), in support of its Complaint against Defendant Alexander Sohaili ("*Sohaili*"), states the following:

**Parties**

1.      Octagon is a District of Columbia corporation with its principal place of business in McLean, Virginia.

2.      Sohaili is an individual and a resident and citizen of California.

**Jurisdiction & Venue**

3.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332, as the parties are citizens of different states (Sohaili – California; Octagon – District of Columbia / Virginia), and the amount in controversy exceeds $75,000, exclusive of costs and interest.

4.      This Court has personal jurisdiction over Sohaili under Va. Code § 8.01-328.1 because, among other things, the cause of action asserted in this Complaint arises from Sohaili transacting business in this Commonwealth and causing injury in this Commonwealth.

5.      In addition, the parties contracted to have this Commonwealth as the exclusive forum for this dispute, and specifically, the United States District Court for the Eastern District of Virginia, Alexandria Division. First Agreement, ¶ 16; Second Agreement, ¶ 10.

## Facts

6.      Octagon is a global, full-service sports, entertainment, and marketing agency that provides, among other services, marketing, representation, management, public relations, and consulting services to athletes and personalities. Among other clients, Octagon represents current and former tennis players and, as part of such representation, negotiates playing contracts, sources and handles endorsement, speaking, and other corporate opportunities, and provides overall career management and development. One source of Octagon's revenue is based on fees that are charged on the compensation an Octagon client receives as part of a commercial relationship (e.g., an endorsement agreement between Iva Jovic and adidas).  Octagon's personnel develop a unique and individual management strategy and marketing plan for each client in order to maximize the client's earning potential and participation in community-related activities. Although Octagon has various offices throughout the United States, and, in fact, the world, its corporate headquarters is located in McLean, Virginia.

7.      Sohaili is a sports agent and a former client manager in Octagon's tennis division. During his employment with Octagon, Sohaili provided services to Octagon clients and recruited prospective Octagon clients throughout the United States.

8.      Octagon expends considerable resources to develop relationships with existing and prospective clients. Octagon's relationships with its clients represent a substantial portion of

Octagon's goodwill. It is critical for Octagon to maintain this goodwill because it is an essential ingredient in obtaining and retaining its relationships with its clients and its reputation in the industry, particularly given the competitive and sensitive nature of the work it performs. In addition, Octagon's business is based on fees generated from these client relationships. As a result, Octagon spends a great deal of effort, time, and money to train and support its agents and employees to create, foster, and maintain the goodwill and relationships with Octagon's clients.

9. In addition, Octagon's key employees, including Sohaili, gain knowledge and confidential and proprietary information (including trade secrets) concerning Octagon's business. For example, this information includes Octagon's fees, Octagon's representation agreement, client contracts, client and business contacts, client and business development strategies, clients and potential clients and related information, personnel information, and Octagon's internal operations, standards, and plans for the future. Sohaili became intimately familiar with Octagon's relationships with its clients and information relating to those clients and relationships. This information is confidential and proprietary, and Octagon undertakes reasonable efforts to protect its trade secrets and confidential information.[1]

10. On or about December 14, 2015, Sohaili entered into an employment agreement with Octagon (the "*First Agreement*"). A true and accurate copy of the First Agreement is attached as **Exhibit A.**

11. The First Agreement contains provisions that, among other things, are consideration for Octagon investing in and funding Sohaili's relationship with Octagon clients,

---

[1] These efforts include a policy of having all employees sign a written agreement and an employee code of conduct, which contain confidentiality provisions barring disclosure of any information relating to the Company, its business, and its clients that is not contained in its approved marketing materials.

such as a confidentiality clause (First Agreement, ¶ 8.), a duty of loyalty clause (First Agreement, ¶ 9.), and an Octagon client non-solicitation restriction (First Agreement, ¶ 6.(b)).

12. On or about March 12, 2019, Sohaili and Octagon entered into another employment agreement ("**_Second Agreement_**"). A true and accurate copy of the Second Agreement is attached as **Exhibit B.** Like the First Agreement, the Second Agreement contains a confidentiality clause (Second Agreement, ¶ 5.), a duty of loyalty clause (Second Agreement, ¶ 4.(b)3)), and an Octagon client, non-solicitation restriction (Second Agreement, ¶ 6.(b)).

13. In particular, the Octagon client, non-solicitation restriction states as follows:

"Except to the extent expressly authorized by Supervisor in writing, during the Restricted Period, Employee agrees not to, directly or indirectly, on behalf of Employee or any other business or entity: (i) solicit[,] divert, or appropriate, or attempt to solicit, divert, or appropriate any Octagon Client or Octagon Business Opportunity for the purpose of providing any services that are the same as those provided by Octagon, or (ii) accept any business from any Octagon Client to provide any such directly competitive services or products."

Second Agreement, ¶ 6.(b).

14. The Restricted Period is defined as "twelve (12) months following the Employment Period," (Second Agreement, ¶ 4.(a)4)), and the Employment Period is defined as the "period of time during which Octagon employs Employee," (Second Agreement, ¶ 2).

15. Further, an Octagon Client is "any individual or entity that: (A) was a client of Octagon at any time during the twenty-four (24) months prior to the end of the Employment Period; and (B) with whom Employee had material business contact while employed by Octagon." Second Agreement, ¶ 4.(a)2).

16. The duty of loyalty clause in the Second Agreements states as follows:

"Employee shall devote Employee's full business time and attention to the furtherance of the business of Octagon and to the faithful and industrious performance of Employee's duties as established from time to time and consistent with Employee's position. Employee agrees to communicate and collaborate openly and effectively at all times with Employee's colleagues and work under the reasonable direction of Supervisor or

otherwise as Octagon's management may determine.  Employee will not, at any time during the Employment Period, engage in any other employment or activity that interferes or conflicts in any way with the performance of Employee's duties for Octagon, and will act positively at all times in furtherance of Octagon's interests. Employee represents and warrants that Employee:  (a) is not a party to any agreement containing a non-competition provision or other restriction with respect to the (i) services or business that Employee will perform for Octagon, or (ii) disclosure or use of information which directly or indirectly relates to the business of Octagon or the services to be rendered by Employee to Octagon, and (b) will not divulge, share or otherwise utilize any trade secret or other proprietary information or property of any non-Octagon entity or person.

Second Agreement, ¶ 6.

17. Prior to hiring Sohaili, Octagon recruited and signed Anna Kalinskaya. At some point after hiring Sohaili, the agent who was primary responsible for representing Ms. Kalinskaya ceased working for Octagon, and Sohaili was afforded the opportunity to have the primary responsibility for the representation and day-to-day management of Ms. Kalinskaya. In that role, Sohaili negotiated various commercial agreements for Ms. Kalinskaya, from endorsement agreements to appearance contracts.  Sohaili had material business contact with Ms. Kalinskaya during his employment with Octagon.

18. As a consequence of Sohaili's employment with Octagon, he was able to lead the recruitment of several tennis players to become Octagon clients. In particular, Sohaili recruited and signed Caty McNally, Taylah Preston, and Iva Jovic.

19. Caty McNally entered into an Octagon representation agreement on or about March 22, 2022. Sohaili was one of the Octagon signatories.

20. Taylah Preston entered into an Octagon representation agreement on or about January 1, 2020. Sohaili was one of the Octagon signatories.

21. Iva Jovic entered into an Octagon representation agreement on or about July 12, 2023. Sohaili was one of the Octagon signatories.

22. From the date of their signings as Octagon clients throughout Sohaili's tenure as an Octagon employee, he was responsible for leading the day-to-day management and representation of Caty McNally, Taylah Preston, and Iva Jovic. In that role, Sohaili negotiated various commercial agreements for Ms. McNally, Ms. Preston, and Ms. Jovic, from endorsement agreements to appearance contracts. Sohaili had material business contact with Ms. McNally, Ms. Preston, and Ms. Jovic during his employment with Octagon.

23. During Sohaili's employment (approximately twelve months prior to Sohaili resigning from Octagon), Octagon became aware that Sohaili was speaking with Stuart Duguid, the founder of a competing tennis representation agency called Evolve. Upon information and belief, Sohaili was seeking employment with Evolve and discussed which Octagon clients he could bring to Evolve.

24. On March 28, 2024, Sohaili called his supervisor, Alastair Garland, and gave notice that Sohaili was resigning effective 11:59 p.m. (Eastern), on April 7, 2024. Initially, Sohaili provided only eight days' notice.[2]

25. Prior to notifying anyone at Octagon that he was resigning, Sohaili contacted Octagon clients he was managing, telling these clients that he was leaving Octagon and going to a new agency.

26. That same day, after Sohaili notified Mr. Garland of his resignation, Garland instructed Sohaili to stop contacting Octagon clients until Octagon was able to put a transition plan in place. Mr. Garland also requested that Sohaili forward all correspondence that Sohaili

---

[2] Section 2 of the Second Agreement requires that a party to "exercise reasonable efforts to give the other party at least two (2) weeks prior notice before terminating [Sohaili's] employment." Second Agreement, ¶ 2.

had sent to the clients informing them of his pending departure from Octagon. Sohaili stated that all of his communications with Octagon clients had taken place either by telephone or in person. In addition, Sohaili already had scheduled additional calls with other Octagon clients. Again, Mr. Garland instructed Sohaili to refrain from contacting Octagon clients until a transition plan could be put into place.

27. On April 1, 2024, Julie Kennedy, Senior Vice President of People and Culture at Octagon, and Sohaili spoke by telephone to walk through various exit documents. During that call, Ms. Kennedy told Sohaili that while his employment with Octagon would end on Friday, April 5, 2024, Sohaili no longer needed to report to work effective April 1, 2024.

28. After that telephone call, Sohaili sent Ms. Kennedy an email stating that Ms. Kennedy had confirmed that his "employment with Octagon will end officially at 5:30pm ET on April 1st, 2024."

29. Ms. Kennedy responded to Sohaili, clarifying that Sohaili's employment with Octagon would not end until April 5, 2024, as noted in the exit letter, but that Sohaili was not required to work after April 1, 2024.

30. Despite Ms. Kennedy's email, Sohaili, who admitted that he was going to "get paid through [April] 5th," Sohaili incorrectly believed that, and inappropriately acted as if, his employment with Octagon ended at 5:30pm ET on April 1, 2024. Sohaili then stated that his notice of resignation and termination of employment would be effective as of 6:53pm ET on April 1.

31. Though Sohaili was still an employee of Octagon and getting paid through April 5, 2024, Sohaili contacted Octagon clients, Ms. Kalinskaya, Ms. Preston, Ms. McNally, and Ms. Jovic, to solicit them to his new place of employment, Evolve.

32. The very next day, on April 2, 2024, Ms. Kalinskaya sent Octagon a notice terminating Octagon's representation. Ms. Kalinskaya's father told Octagon that she was going to be represented by Sohaili at Evolve.

33. Three days later, on April 5, 2024, Ms. Preston sent Octagon a notice terminating Octagon's representation. Ms. Preston's parents confirmed that she was going to be represented by Sohaili at Evolve.

34. On April 19, 2024, Ms. McNally sent Octagon a notice terminating Octagon's representation. Ms. McNally confirmed that she was going to be represented by Sohaili at Evolve.

35. As the year progressed, on several occasions, employees of Octagon's tennis division witnessed Mr. Sohaili meeting with and speaking to Ms. Jovic and/or her family. For example, Mr. Garland saw Sohaili having lunch with Ms. Jovic and her family at the All-England Lawn and Tennis Club in July 2024.

36. Shortly thereafter, on August 6, 2024, Ms. Jovic sent a notice terminating Octagon's representation. On April 22, 2024, Evolve's Instagram account posted that Ms. Jovic was now represented by Evolve. A true and accurate copy of Instagram Post is attached as **Exhibit C**.

37. In addition, during Octagon's representation of Ms. Jovic, Octagon procured an endorsement agreement for Ms. Jovic with adidas. Octagon is informed that Ms. Jovic has signed another endorsement agreement with adidas, continuing Ms. Jovic's relationship with adidas that began at Octagon. Octagon has been deprived of its fees on Ms. Jovic's continued relationship and current agreement with adidas.

38. Further, during Octagon's representation of Ms. Jovic, Octagon procured an endorsement agreement for Ms. Jovic with Yonex. Octagon is informed that Ms. Jovic has signed another endorsement agreement with Yonex, continuing Ms. Jovic's relationship with adidas that began at Octagon. Octagon has been deprived of its fees on Ms. Jovic's continued relationship and current agreement with Yonex.

39. Based on Octagon's calculations, the amount of fees Octagon has lost is estimated to be over U.S. $780,000.

## Count I
### (Breach of Contract)

40. Octagon incorporates by reference the allegations contained in paragraphs 1-39 of this Complaint as if set forth in their entirety.

41. Octagon and Sohaili entered into a valid contract, the Second Agreement, that is enforceable by Octagon against Sohaili.

42. Octagon successfully and satisfactorily performed its duties under the Second Agreement.

43. Sohaili has breached the Second Agreement with Octagon, by among other things, violating his duty of loyalty by working for Evolve while still being compensated by Octagon as an Octagon employee and by soliciting and providing services to Octagon Clients during the Restricted Period.

44. As a result of Sohaili's breaches of the Second Agreement, Octagon has been damaged in an amount not less than $780,000.

**Count II**
**(Tortious Interference with Contract)**

45. Octagon incorporates by reference the allegations contained in paragraphs 1-39 of this Complaint as if set forth in their entirety.

46. Octagon had a valid, existing contract with Ms. Jovic, which required Ms. Jovic to pay Octagon a percentage of her gross compensation of her endorsement agreements with adidas and Yonex.

47. Sohaili had knowledge of the contract between Ms. Jovic and Octagon as he was Octagon's signatory on that contract.

48. There is a reasonable certainty that absent Sohaili's intentional interference and improper methods, as described in this Complaint, Ms. Jovic would not have breached her contract with Octagon by failing to pay a percentage of her gross compensation of her endorsement agreements with adidas and Yonex.

49. Sohaili's actions have damaged Octagon in an amount not less than $780,000.

**Count III**
**(Tortious Interference with Business Expectancy)**

50. Octagon incorporates by reference the allegations contained in paragraphs 1-39 of this Complaint as if set forth in their entirety.

51. Octagon had an existing business relationship with Ms. Kalinskaya, Ms. McNally, and Ms. Preston with a probability of future economic benefit to Octagon.

52. Sohaili had knowledge of the relationship between Ms. Kalinskaya, Ms. McNally, Ms. Preston and Octagon.

53.   There is a reasonable certainty that absent Sohaili's intentional interference and improper methods, as described in this Complaint, Octagon would have continued its relationship with Ms. Kalinskaya, Ms. McNally, Ms. Preston and Ms. Jovic.

54.   Sohaili's actions have damaged Octagon in an amount not less than $780,000.

## PRAYER FOR RELIEF

WHEREFORE, Octagon respectfully requests that the Court enter an award in its favor against Sohaili:

(1)   awarding Octagon money damages in the amount of not less than $780,000; and

(2)   awarding Octagon pre-judgment and post-judgment interest; and

(3)   awarding Octagon all costs and expenses, including reasonable attorneys' fees; and

(4)   any other relief the Court deems appropriate.


Dated: October 8, 2025                          Respectfully submitted,


/s/ Craig J. Franco
Craig J. Franco, VSB #41449
Ward & Berry PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
Phone: 703-340-1132
cfranco@wardberry.com
*Counsel for Plaintiff Octagon, Inc.*

Paul J. Haase, VSB #48347
OCTAGON, INC.
7950 Jones Branch Drive
Suite 700N
McLean, VA  22102
Phone: (703) 905-3300
Paul.Haase@octagon.com