octagon

**BY ELECTRONIC MAIL**
12/14/2015

Alexander Sohaili
132 Vista Place
Venice, CA 90291

Dear Alex:

This agreement ("Agreement") will confirm the understanding between Octagon, Inc. ("Octagon") and you ("Employee"). In consideration of the mutual promises and covenants set forth herein, it is agreed as follows:

1.      **Establishment of Employment Relationship.**  Employee acknowledges and agrees that Employee is desirous of employment with Octagon, that Octagon has offered such employment, and that Employee has accepted such offer.

2.      **At Will Employment Relationship.**

        (a)     Employee's employment with Octagon shall commence effective January 5, 2016.  Employee's employment by Octagon will be employment "at will," and may be terminated at the option of Employee or Octagon at any time with or without cause or notice, except that after the initial ninety (90) day probationary period, each party shall exercise reasonable efforts to give the other party at least two (2) weeks prior notice before terminating Employee's employment.

        (b)     In addition to, and without limiting, Octagon's termination rights in Section 2(a) above, Octagon will have the right to terminate this Agreement effective immediately upon written notice to Employee, in the event Employee: (i) dies, (ii) commits a felony or a fraud, (iii) abandons the work for Octagon outlined herein, (iv) engages in conduct that brings Octagon or any Octagon Client into public disgrace or disrepute, (v) fails to follow the policies and practices of Octagon applicable to Employee, (vi) fails or is unable to perform the duties and responsibilities of the employment position, (vii) has made a misrepresentation or breaches any representation or warranty or any other material provision of this Agreement, (viii) breaches any other agreement with Octagon or agreement entered into on behalf of Octagon, (ix) performs in a negligent manner, or (x) is subject to any disciplinary action, censure, suspension, or decertification, loss of licensure, or other similar loss of rights afforded by a governing body.

        (c)     The entire period during which Octagon employs Employee shall be referred to herein as the "Employment Period."  The twelve (12) month period following the termination of Employee's employment, for any reason and regardless of whether such termination was effectuated by Employee or Octagon, shall be referred to as the "Restricted Period."

3.      **Compensation/Title/Supervisor.**

        (a)     Employee's salary for this position shall be paid at an annual rate of Forty Two Thousand Five Hundred Dollars U.S. Dollars (U.S. $42,500).  These earnings shall be payable in approximately equal installments in accordance with Octagon's customary payroll practices.  Such compensation shall be subject to all applicable withholding taxes, other normal payroll taxes, and any other amounts required by law to be withheld.

        (b)     Employee shall relocate to the DC Metro/Northern Virginia/Maryland area and shall work in Octagon's McLean, Virginia office.  Company agrees to reimburse Employee for moving expenses up to a maximum of Two Thousand Five Hundred U.S. Dollars (U.S. $2,500) upon Employee's submission of original receipts to Company.

        (c)     Employee will report to Alastair Garland or such other subsequent supervisor ("Supervisor") as determined by Octagon management.

        (d)     Employee's title shall be Client Manager or a similar title to be determined by Supervisor and/or Octagon's management.

7950 Jones Branch Drive Suite 700N McLean VA 22107 USA
t (703) 905 3300  f (703) 905 4495  www.octagon.com

Part of Octagon Worldwide

Exhibit A

(e)     Employee is eligible to be considered for bonuses to be determined in the discretion of Employee's Supervisor and/or Octagon management.  Any such payment shall be payable in accordance with Octagon's customary payroll practices and shall be subject to all applicable withholding taxes, other normal payroll taxes, and any other amounts required by law to be withheld.

(f)     Employee will receive Octagon's standard employee benefits consistent with Employee's position.

(g)     Subject to a travel and/or expense budget, Employee will be reimbursed for reasonable and necessary travel, client services, and/or business expenses incurred and submitted in accordance with Octagon's customary policies, procedures, and approvals regarding expense reimbursement.  Employee agrees to optimize reimbursement of expenses from third parties.

(h)     In the event that any attorneys' fees, fine, cost, judgment, or settlement is/are incurred for any dispute, arbitration, legal advice, or litigation relating to any act, omission, service, or transaction of Employee and Employee received or would receive a commission or other incentive compensation relating to or as a result of such act, omission, service, or transaction, Octagon shall have the right to recoup the incurred amounts from Employee's current and future commissions and incentive compensation, or if Employee is no longer employed by Octagon, from Employee.

4.     **Employee Consent to Reasonable Restrictions/Consideration.**  Employee acknowledges that Octagon operates in the unique, specialized and highly competitive worldwide entertainment, sports, music, event, and personalities marketing, management, and representation industries.  Employee further acknowledges that employment with Octagon will provide unique industry, Octagon and client specific knowledge, contacts, and information that have value to Employee.  The consideration for Employee's consent to the restrictions set forth in this Agreement is employment by Octagon, and Employee acknowledges the receipt and sufficiency of this consideration.  Employee understands and acknowledges that the agreements and covenants contained in this Agreement are essential to protect the business, clients, trade secrets, and other property of Octagon.  Employee acknowledges that the duration, extent, and application of each of the restrictions on Employee set forth in this Agreement are reasonable and necessary for protection of the fundamental interests of Octagon.

5.     **Entity and Time-Limited Non-Competition Restriction.**   Except to the extent expressly authorized by Employee's Supervisor in writing or otherwise required by law, during the Employment Period and the Restricted Period, Employee will not work in the same or similar capacity as Employee worked for Octagon, as an employee, consultant, contractor, licensor, advisor, agent, officer, or director of, or in any other employment-related capacity for Creative Artists Agency, International Management Group, Wasserman Media Group, William Morris Endeavor, Lagardère, Excel Sports Management, Relativity Sports, ITMS Sports, ACE Group, Gersh Agency, Elite Management L'Estoril, Prosuccess Sports Management, International Sports Advisors Co., Global Sports, Globosport, InsideOut Sports & Entertainment, International Sports Advisors, Lleyton Hewitt Marketing, 360 Management, IBF-Team Scandinavia, Inc., Starpro Sports Management, Sports Marketing Consultants Inc., Global Tennis Connections, SFX Sports, Ugo Colombini, Rob Aivatoglou, Cyril Buscaglione, AMI Promanagement, Top Seed, ChampEvents, B1PR, Next Generation, TK Plus, Team8 or any of their present or future affiliates, successors, acquirers, or related companies.

6.     **Time-Limited   Octagon   Client   and   Octagon   Business   Opportunity   Non-Solicitation Restrictions/Definition of Octagon Property.**

(a)  *Definitions.*  For purposes of this Agreement, the following definitions shall apply:

1)     "Octagon Property" shall mean and include:

a.   all items set forth in Section 8 of this Agreement,

b.  all material created in the course of Employee's duties ("Work"), which shall constitute a work-made-for-hire as defined in the United States Copyright Act of 1976.  Octagon shall be the

author of said work-made-for-hire and the owner of all rights in and to the Work throughout the universe, in perpetuity and in all languages, for all now known or hereafter existing uses, media and forms, including, without limitation, the copyrights therein and thereto throughout the universe for the initial term and any and all extensions and renewals thereof. Octagon shall have the right to make such changes therein and such uses thereof as it may deem necessary or desirable. To the extent that the Work is not recognized as a work-made-for-hire, Employee hereby assigns, transfers and conveys to Octagon, without reservation, all of Employee's right, title and interest throughout the universe in perpetuity in the Work, including, without limitation, all rights of copyright and copyright renewal in said Work or any part thereof,

c.  any and all company equipment including, without limitation, computers, laptops, printers, scanners, computer peripheral devices or any other similar devices, telephone lists, rolodexes, customer lists, and other similar items;

d.  Octagon Business Opportunities,

e.  fees and compensation derived from any Octagon Business Opportunity, regardless of whether such fees and compensation are received during the Employment Period, the Restricted Period, or thereafter,

f.  Octagon Client Contracts, and

g.  fees and compensation derived from any Octagon Client Contract, regardless of whether such fees and compensation are received during the Employment Period, the Restricted Period, or thereafter.

2)  "Octagon Client" shall mean and include any individual or entity that: (i) was a client of Octagon at any time during the twenty-four (24) months prior to the end of the Employment Period, and (ii) with whom Employee had contact or about whom Employee was provided confidential or non-public information during the Employment Period.

3)  "Octagon Client Contract" shall mean and include: (i) any contract, agreement, relationship, or arrangement entered into or being negotiated during the Employment Period by or on behalf of an Octagon Client, (ii) any renewals, extensions, or modifications of any contract, agreement, relationship, or arrangement, or any continuation of the foregoing, in any form, entered into or being negotiated during the Employment Period by or on behalf of an Octagon Client, (iii) any contract, agreement, relationship, or arrangement, including, without limitation, any renewals, extensions, or modifications of any contract, agreement, relationship, or arrangement, or any continuation of the foregoing in any form, entered into within twelve (12) months after the Employment Period by or on behalf of a Employment Period by or on behalf of an Octagon Client, and (iv) any contract, agreement, relationship, or arrangement, including, without limitation, any renewals, extensions, or modifications of any contract, agreement, relationship, or arrangement, or any continuation of the foregoing in any form, that would fall within this section but for an intentional effort to avoid paying a fee or compensation to Octagon.

4)  "Octagon Business Opportunity" shall mean and include any business opportunity or prospective business opportunity actively targeted or solicited by Octagon or Employee at any time during the twelve (12) months prior to the end of the Employment Period. A business opportunity shall include, but is not limited to, an opportunity to secure, sell, purchase, manage, obtain, consult, advise, procure, market, develop, license, endorse, promote, or otherwise service a company (or other entity), person, sponsor, event, series, property, appearance, intellectual property right, media right, marketing campaign, talent, delivery of services in a new form or media, consultancy (or similar arrangement), or any other similar business arrangement.

(b)  *Time-Limited Octagon Client and Octagon Business Opportunity Non-Solicitation Restriction.* During the Restricted Period, Employee agrees not to, directly or indirectly, on behalf of Employee or any other person or

entity in competition with the business of Octagon: (i) solicit business from (similar to those Employee solicited during the Employment Period) any Octagon Business Opportunity, (ii) provide services (similar to those Employee provided during the Employment Period) to any Octagon Client, or (iii) otherwise appropriate any Octagon Client or Octagon Business Opportunity.

7. **Non-Solicitation Restriction.** Employee will not directly or indirectly at any time during or after the Employment Period attempt to disrupt, damage, impair or interfere with Octagon's business by raiding any of Octagon's employees or soliciting any of them to resign from their employment by Octagon, or by disrupting the relationship between Octagon and any of its consultants, agents, representatives or vendors. Employee acknowledges that this covenant is necessary to enable Octagon to maintain a stable workforce and remain in business.

8. **Duties Relating to Confidentiality.**

(a) Employee acknowledges that Employee's compensation is confidential and agrees not to disclose any compensation information to any other employee of Octagon (except for Employee's Supervisor), or any other person whatsoever with the exception of immediate family members and professional advisors, or as otherwise required by law.

(b) Employee further acknowledges that the existence and terms of arrangements and contracts with Octagon Clients and/or Octagon Business Opportunities are confidential and Octagon deems such information to be trade secrets, that Employee has or will have access to such confidential, non-public, and trade secret information, and that the failure to maintain the confidential nature of Octagon Client and Octagon Business Opportunity information and other trade secrets may cause serious harm to Octagon. Employee agrees to maintain such information in strict confidence, and further agrees not to disclose, furnish, disseminate, make available or, except in the course of performing Employee's duties of employment, use any trade secrets or confidential business and technical information of Octagon or its clients, consultants, agents, or vendors, including without limitation as to when or how Employee may have acquired such information. Such confidential information shall include, without limitation, Octagon's recruiting, marketing, and management methods and business techniques; business and marketing strategies and plans; the existence of and/or terms of any contract or business opportunity; promotional, training and other business materials; and client and/or prospective client information and lists. Employee specifically acknowledges that all such confidential information, whether reduced to writing, maintained on any form of electronic media, or maintained in the mind or memory of Employee and whether compiled by Octagon and/or Employee, derives independent economic value from not being readily known to or ascertainable by proper means by others who can obtain economic value from its disclosure or use, that reasonable efforts have been made by Octagon to maintain the secrecy of such information, that such information is the sole property of Octagon and that any retention and use of such information by Employee during Employee's employment with Octagon (except in the course of performing duties and obligations hereunder) or after the termination of Employee's employment shall constitute a misappropriation of Octagon's trade secrets.

9. **Employee Duty of Loyalty.** Employee shall devote Employee's full business time and attention to the furtherance of the business of Octagon and to the faithful and industrious performance of Employee's duties as established from time to time and consistent with Employee's position. Employee agrees to communicate and collaborate openly and effectively at all times with Employee's colleagues and work under the reasonable direction of Supervisor or otherwise as Octagon's management may determine. Employee will not, at any time during the Employment Period, engage in any other employment or activity that interferes or conflicts in any way with the performance of Employee's duties for Octagon, and will act positively at all times in furtherance of Octagon's interests. Employee represents and warrants that Employee: (a) is not a party to any agreement containing a non-competition provision or other restriction with respect to the (i) services or business that Employee will perform for Octagon, or (ii) disclosure or use of information which directly or indirectly relates to the business of Octagon or the services to be rendered by Employee to Octagon, and (b) will not divulge, share or otherwise utilize any trade secret or other proprietary information or property of any non-Octagon entity or person.

10. **Octagon Property/Recovery of Octagon Property and Outstanding Corporate Card Charges.** Employee acknowledges and agrees that:

(a)    upon termination or separation of Employee's employment with Octagon, for any reason, Employee shall return all Octagon Property to Octagon;

(b)    upon and after expiration or termination of Employee's employment with Octagon for any reason, Employee agrees upon request of Octagon to sign documentation prepared by Octagon that memorializes Octagon's right to Octagon Property and informs clients, vendors, consultants, payors, payees, and others of such fact and instructing that all fees and compensation that are Octagon Property shall be directed to Octagon. If any such fees or compensation are directed to Employee or any entity with which Employee becomes associated, Employee shall ensure that neither Employee nor any affiliated entity deposits, cashes or otherwise negotiates such funds, but shall ensure that such funds are forwarded to Octagon (and endorsed over to Octagon if funds would not otherwise be negotiable by Octagon) within five (5) business days of receipt. Upon Octagon's request and during the three (3) year period following the Employment Period, Employee shall provide Octagon with true and correct copies of all agreements, invoices, checks or other financial records related to Octagon Property;

(c)    in the event that Octagon Property is not returned to Octagon, Octagon shall have the right to charge Employee for all reasonable damages, costs, attorneys' fees and other expenses incurred in recovering Octagon Property, including but not limited to the fees and costs associated with initiating legal proceedings to recover Octagon Property;

(d)    all property rights granted or agreed to be granted to Octagon under this Agreement shall vest in Octagon immediately and shall remain vested whether this Agreement expires in normal course or is terminated for any reason; and

(e)    Employee authorizes Octagon and/or any of its affiliates, to the extent permitted by applicable law, to deduct from Employee's salary, bonus, severance payments (if any), and/or expense reimbursements, any outstanding unsubstantiated or personal charges on any corporate credit card provided to Employee, including late charges or other penalties, immediately upon termination or separation of Employee's employment with Octagon for any reason.

11.    **Octagon Right to Obtain Injunctive Relief/Attorneys Fees in Event of Dispute.**  It is agreed and understood that any breach of Sections 5, 6, 7, 8, 9 or 10 of this Agreement by Employee is likely to result in irreparable injury to Octagon and that the remedy at law alone will be inadequate, and that in addition to any other remedy it may have, Octagon shall be entitled to enforce the specific performance of this Agreement and to seek both temporary and permanent injunctive relief (to the extent permitted by law) without the necessity of proving actual damages. Notwithstanding anything to the contrary in this Agreement, Octagon shall be permitted to seek such injunctive relief in any court of law in any jurisdiction. Nothing contained in this Section shall prohibit Octagon from pursuing any remedies in addition to injunctive relief, including recovery of damages.

12.    **Severability.**  In the event any provision or part of this Agreement is declared void and unenforceable in whole or in part, this finding shall not affect the validity of the remainder of this Agreement, and the remaining terms shall continue in full force and effect.

13.    **Waiver.**  The waiver by any party of any breach of this Agreement shall not operate as, or be construed as, a waiver of any subsequent breach of any provision of this Agreement.

14.    **Successors and Assigns.**  This Agreement will inure to the benefit of the successors and assigns of Octagon. The obligations of Employee are personal, are not assignable, and may be performed only by Employee.

15.    **Entire Agreement.** This Agreement contains the entire understanding between Octagon and Employee as to the terms hereof, replaces any previous written or verbal understandings between them, and may not be changed except by written agreement executed by both Octagon and Employee.

16.    **Consent to Jurisdiction/Governing Law.**  To the extent any disputes relate to, or arise from, this Agreement, the parties acknowledge and consent to venue in, and the exclusive jurisdiction of, the courts of the Commonwealth of Virginia in the County of Fairfax or the United States District Court for the Eastern District of Virginia, Alexandria

Division. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, USA without regard to conflict of laws principles.

17.    **Employee Opportunity to Obtain Legal Review.**  Employee acknowledges that Employee has been afforded the opportunity to have this Agreement reviewed by legal counsel of Employee's choosing and at Employee's expense, and that by executing this Agreement, Employee further acknowledges that Employee has taken that opportunity or has knowingly waived the right to do so.

18.    **Notices.**  All notices, claims, requests, demands, and other communications desired or required hereunder shall be made in writing and shall be deemed to have been duly given when received if mailed (registered or certified mail, postage prepaid, return receipt requested, or other express mail with confirmed delivery) and addressed to Employee at Employee's last known home address and to Octagon at 7950 Jones Branch Drive, Suite 700N, McLean, VA 22107, Attn: General Counsel.

19.    **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

20.    **Provisions Surviving Termination of Agreement.**  The provisions of this Agreement that shall survive termination of this Agreement are Sections 2(c), 3(g), and 4 through 20.

I HAVE READ AND FULLY UNDERSTAND AND ACCEPT ALL OF THE TERMS AND CONDITIONS SET FORTH ABOVE:

By: _____    Date: __12 / 15 / 15__
Alexander Sohaili

ACCEPTED AND AGREED:

By: _____    Date: __12.16.2015__
Jorge Salkeld
Managing Director, Tennis

By: _____    Date: __12/16/15__
Julie Kennedy
Vice President, Talent