

VIA ELECTRONIC MAIL
February 21, 2019

Alexander Sohali
132 Vista Place
Venice, CA 90291

Dear Alexander:

This agreement ("**Agreement**") will confirm the understanding between Octagon, Inc. ("**Octagon**") and you ("**Employee**"). In consideration of the mutual promises and covenants set forth herein, it is agreed as follows:

1.  **Continuation of Employment Relationship; Transfer to California.** Employee acknowledges and agrees that he is desirous of continued employment with Octagon, that Octagon has offered such employment, and that he has accepted such offer. In addition, Employee has requested to transfer to, and work primarily in, California from Octagon's headquarters in McLean, Virginia, and Octagon has agreed to such transfer.

2.  **At Will Employment Relationship.** Employee's employment with Octagon pursuant to the terms hereof shall commence effective March 1, 2019. Employee's employment by Octagon will be employment "at will," and nothing in Octagon's policies, actions, or this document shall be construed to alter the "at will" nature of Employee's status with Octagon. Employee understands that Octagon may terminate his employment at any time for any reason or for no reason, with or without notice, provided it is not terminated in violation of state or federal law. Each party shall exercise reasonable efforts to give the other party at least two (2) weeks prior notice before terminating Employee's employment. The entire time period of time during which Octagon employs Employee shall be referred to herein as the "**Employment Period.**"

3.  **Title; Supervisor; Compensation Terms; Benefits.**

    (a) _Title._ Employee's title shall be Client Manager or a similar title to be determined by Supervisor (as defined below) and/or Octagon management.

    (b) _Supervisor._ Employee shall report to Alastair Garland or such other subsequent supervisor ("**Supervisor**") as determined by Octagon management.

    (c) _Base Salary._ During the Employment Period, Employee shall be paid a base salary for this position at an annual rate of Fifty Thousand U.S. Dollars (US $50,000) (the "**Base Salary**"). The Base Salary shall be paid in approximately equal semi-monthly installments, in arrears, and in accordance with Octagon's customary payroll practices, and shall be subject to payroll tax withholding, other authorized payroll deductions, and any other amounts required by law to be withheld.

    (d) _Benefits._ During the Employment Period the Employee will be entitled to participate in all employee benefit plans, practices and programs maintained by Octagon (or its parent company), as in effect from time to time (collectively, "**Employee Benefit Plans**"), on a basis that is no less favorable than is provided to other similarly situated employees of Octagon, to the extent consistent with applicable law and the terms of the applicable Employee Benefit Plans. Octagon reserves the right to amend or cancel any Employee Benefit Plan at any time in its sole discretion, subject to the terms of such Employee Benefit Plan and applicable law. During the Employment Period, the Employee will be entitled to paid vacation in accordance with the Employee Benefit Plans.

    (e) _Discretionary Bonus._ During the Employment Period, Employee shall be eligible to be considered for bonuses to be determined in the discretion of Supervisor and/or Octagon management ("**Discretionary Bonus**"). Any such Discretionary Bonus shall be payable only when determined by Octagon management in consultation with Supervisor. In order to receive a Discretionary Bonus, the Employee must be employed by Octagon on the date the bonus is paid. As consideration for this new Agreement, Employee shall be paid a Discretionary Bonus, due within thirty (30) days' execution of this Agreement.

7950 Jones Branch Drive Suite 700N McLean VA 22107 USA
t (703) 905 3300  f (703) 905 4495  www.octagon.com

Part of Octagon Worldwide

Exhibit B

(f)  Travel and Expenses. Subject to a travel and/or expense budget, Employee will be reimbursed for reasonable and necessary out-of-pocket business, entertainment and travel expenses incurred by the Employee in connection with the performance of the Employee's duties hereunder and submitted in accordance with Octagon's expense reimbursement policies and procedures. Employee agrees to optimize reimbursement of expenses from third parties.

(g)  Octagon Recovery. In the event that any attorneys' fees, fines, costs, judgments, or settlements are incurred for any dispute, arbitration, legal advice, or litigation relating to any act, omission, service, or transaction of Employee and Employee received or would receive a commission, incentive-based compensation, or Discretionary Bonus relating to or as a result of such act, omission, service, or transaction, Octagon shall have the right to recoup the incurred amounts from Employee's current and future commissions, incentive-based compensation, or any Discretionary Bonus, or, if Employee is no longer employed by Octagon, from Employee. In addition, Employee authorizes Octagon, to the extent permitted by applicable law, to deduct from Employee's Base Salary, incentive compensation, severance payments, Discretionary Bonus, and/or expense reimbursements, any outstanding unsubstantiated or personal charges on any corporate credit card provided to Employee, including late charges or other penalties, immediately upon termination or separation of Employee's employment with Octagon for any reason.

4.  **Restrictive Covenants**.

(a)  Definitions.  For purposes of this Agreement, the following definitions shall apply:

1)  "**Octagon Business Opportunity**" shall mean: any "business opportunity" actively targeted or solicited by Octagon or Employee at any time during the twelve (12) months prior to the end of the Employment Period. A "business opportunity" shall include, but is not limited to, an opportunity to secure, sell, purchase, manage, obtain, consult, advise, procure, market, develop, license, endorse, promote, or otherwise service a company (or other entity), person, sponsor, event, series, property, appearance, intellectual property right, media right, marketing campaign, talent, delivery of services in a new form or media, consultancy (or similar arrangement), or any other similar business arrangement.

2)  "**Octagon Client**" shall mean: any individual or entity that:  (A) was a client of Octagon at any time during the twenty-four (24) months prior to the end of the Employment Period; and (B) with whom Employee had material business contact while employed by Octagon.

3)  "**Octagon Client Contract**" shall mean:  (A) any contract, agreement, relationship, or arrangement (collectively referred to as a "**Deal**") entered into or being negotiated during the Employment Period by or on behalf of an Octagon Client; (B) any renewals, extensions, modifications, or any other continuations of any type (collectively referred to as "**Renewals**") of any such Deals entered into or being negotiated during the Employment Period by or on behalf of an Octagon Client; (C) any Deal and any Renewals thereof entered into within twelve (12) months after the Employment Period by or on behalf of an Octagon Client; and (D) any Deal and any Renewals thereof, that would fall within this definition but for an intentional effort to avoid paying a fee or compensation to Octagon.

4)  "**Restricted Period**" shall mean twelve (12) months following the Employment Period.

(b)  Employee Consent to Reasonable Restrictions/Consideration. Employee acknowledges that Octagon operates in a the specialized and highly competitive worldwide entertainment, sports, event, and personalities marketing, management, and representation industries and that his employment with Octagon will expose Employee to unique industry information, as well as information relating to Octagon Clients, Octagon Client Contracts, and Octagon Business Opportunities, and other competitively sensitive information that are critical to Octagon's business and to which Employee would not otherwise have access ("**Confidential Information**"). In consideration of Octagon providing Employee access to its Confidential Information and Trade Secrets (as defined under the Virginia Trade Secrets Act) as well as Employee's employment at Octagon, and the promises and mutual representations made in this Agreement, Employee consents to the restrictions set forth in this Agreement and acknowledges the receipt and sufficiency of such consideration. Employee acknowledges that the duration, extent, and application of each of the restrictions on Employee set forth in this Agreement, including those set forth below, are reasonable and necessary for protection of Octagon's legitimate business interests.

1) Non-Competition. Except to the extent expressly authorized by Supervisor in writing or as otherwise required by law, during the Employment Period and the Restricted Period, Employee will not directly or indirectly provide the same or substantially similar services Employee provided to Octagon in the last two (2) years of Employee's employment to any of the following competing businesses anywhere in the world, whether as an employee, consultant, contractor, licensor, advisor, agent, officer, or director of, or in any other employment-related capacity whatsoever: Creative Artists Agency/CAA Sports LLC, Lagardère, William Morris Endeavor/International Management Group, Wasserman Media Group, Excel Sports Management, Perennial Sports & Entertainment, KMG Sports Management, Alliance Sports Management (ASM), Sports Management WorldWide (SMWW), Relativity Sports, RocNation Sports, Blue Equity, Andre Agassi Enterprises, B&A Sports Management, Belly Button, Edgley Smylie Management Pty Ltd, GS Consulting, Hans Management, Humarks S.S., Ono Management, Perenterprises, Sunset Consulting, C5Spider, or any of their present or future affiliates, successors, acquirers, or related companies. Employee agrees that Octagon provides its services throughout the world and that this worldwide restriction is reasonable and necessary to protect Octagon's legitimate business interests. Employee also understands that, for purposes of this Agreement, "indirectly" means that Employee will not assist others in performing those activities Employee is prohibited from engaging in directly under this Agreement.

2) Octagon Client and Octagon Business Opportunity Non-Solicitation. Except to the extent expressly authorized by Supervisor in writing, during the Restricted Period, Employee agrees not to, directly or indirectly, on behalf of Employee or any other business or entity: (i) solicit divert, or appropriate, or attempt to solicit, divert, or appropriate any Octagon Client or Octagon Business Opportunity for the purpose of providing any services that are the same as those provided by Octagon, or (ii) accept any business from any Octagon Client to provide any such directly competitive services or products.

3) Employee Non-Solicitation. Employee will not directly or indirectly at any time during or after the Employment Period solicit, recruit, or encourage then-current Octagon employees or Octagon employees who have terminated their employment with Octagon within twelve (12) months of the solicitation, recruitment, or encouragement, to provide to a competing business the same or substantially similar services they provided to Octagon.

5. **Duties Relating to Confidentiality.**

(a) Confidentiality. Employee acknowledges that Octagon's Confidential Information and Trade Secrets include, but is not limited to, Octagon's recruiting, marketing, and management methods and business techniques; business and marketing strategies and plans; the existence of and/or terms of any contract or business opportunity; promotional, training and other business materials; and client and/or prospective client information and lists and that the failure to protect Octagon's Confidential Information and Trade Secrets will cause serious harm to Octagon. Accordingly, for three (3) years after the Employment Period, Employee will not, except as authorized and required to perform Employee's duties for Octagon, directly or indirectly: use, disclose, reproduce, distribute, or otherwise disseminate the Confidential Information or Trade Secrets, or take any action causing, or fail to take any action necessary to prevent any such information to lose its character or cease to qualify as Confidential Information. Employee agrees never to use, disclose, reproduce, distribute, or otherwise disseminate Octagon's Trade Secrets. Employee also agrees to ask Octagon, both during and after employment, if Employee has any questions about whether particular information is Confidential Information or a Trade Secret before using or disclosing such information. Employee specifically acknowledges that all of Octagon's Confidential Information and Trade Secrets, whether reduced to writing, maintained on any form of electronic media, or maintained in the mind or memory of Employee and whether compiled by Octagon and/or Employee, is the sole property of Octagon and shall be returned and no copies retained upon termination or upon earlier demand by Octagon.

(b) Legal Exceptions to Confidentiality Obligations. Employee understands that nothing contained in this Agreement limits Employee's ability to file a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, or any other federal, state, or local governmental agency or commission ("**Government Agencies**"). Employee also understands that this Agreement does not limit Employee's ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any

Government Agency, including providing documents or other information, without notice to Octagon. This Agreement also does not limit Employee's right to receive an award for information provided to any Government Agencies. Employee also understands that Employee shall not be held criminally or civilly liable under any Federal or state trade secret law for the disclosure of a trade secret that: (1) is made (a) in confidence to a Federal, state, or local government official, either directly or indirectly, or to an attorney, and (b) solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Employee also understands that disclosure of trade secrets to attorneys, made under seal, or pursuant to court order is also protected under 18 U.S. Code §1833 in a retaliation lawsuit based on the reporting of a suspected violation of law.

6.    **Employee Duty of Loyalty.**   Employee shall devote Employee's full business time and attention to the furtherance of the business of Octagon and to the faithful and industrious performance of Employee's duties as established from time to time and consistent with Employee's position.   Employee agrees to communicate and collaborate openly and effectively at all times with Employee's colleagues and work under the reasonable direction of Supervisor or otherwise as Octagon's management may determine.   Employee will not, at any time during the Employment Period, engage in any other employment or activity that interferes or conflicts in any way with the performance of Employee's duties for Octagon.   Employee represents and warrants that Employee:   (a) is not a party to any agreement containing a non-competition provision or other restriction with respect to the (i) services or business that Employee will perform for Octagon, or (ii) disclosure or use of information which directly or indirectly relates to the business of Octagon or the services to be rendered by Employee to Octagon, and (b) will not divulge, share or otherwise utilize any trade secret or other proprietary information or property of any non-Octagon entity or person.

7.    Octagon Property; Work-For-Hire.

(a)    Definition of Octagon Property. "**Octagon Property**" shall mean: (i) Confidential Information and Trade Secrets (including any Octagon Client Contracts or Octagon Business Opportunities); (ii) all material created in the course of Employee's duties ("**Work**"); (iii) any and all company equipment including, without limitation, computers, laptops, printers, scanners, computer peripheral devices or any other similar devices, telephone lists, rolodexes, customer lists, and other similar items; (iv) Octagon Business Opportunities, (v) fees and compensation derived from any Octagon Business Opportunity, regardless of whether such fees and compensation are received during the Employment Period, the Restricted Period, or thereafter, (vi) Octagon Client Contracts, and (vii) fees and compensation derived from any Octagon Client Contract, regardless of whether such fees and compensation are received during the Employment Period, the Restricted Period, or thereafter.

(b)    Work-For-Hire. All Work shall constitute a work-made-for-hire as defined in the United States Copyright Act of 1976 and Octagon shall be the author of all Work and the owner of all rights in and to the Work throughout the universe, in perpetuity and in all languages, for all now known or hereafter existing uses, media and forms, including, without limitation, the copyrights therein and thereto throughout the universe for the initial term and any and all extensions and renewals thereof. Octagon shall have the right to make changes to the Work and make uses thereof as it may deem necessary or desirable. To the extent that the Work is not recognized as a work-made-for-hire, Employee hereby assigns, transfers and conveys to Octagon, without reservation, all of Employee's right, title and interest throughout the universe in perpetuity in and to the Work, including, without limitation, all rights of copyright and copyright renewal in said Work or any part thereof.

(c)    Assignment of Octagon Property. Employee hereby assigns, transfers, and conveys, to and for the benefit of Octagon, all rights under and interests in and to all Octagon Property. Such assignment, transfer, and conveyance shall be executed to the fullest extent permitted by the laws of the applicable jurisdiction and the rules of any applicable regulatory body without rights of setoff or counterclaim by you. Furthermore, Employee acknowledges that any and all fees, revenues, or compensation Employee receives which arise from or relate to the Octagon Client Contracts are Octagon Property and shall be held in trust by Employee for the benefit of Octagon, and Employee agree to promptly remit any fees, revenue, and compensation received thereunder within ten (10) days' of Employees' receipt thereof. Employee agrees to use best efforts to assist Octagon, at Octagon's request, in collecting all fees and monies owed to Octagon by Octagon Clients. All property rights granted or agreed to be granted to Octagon under this Agreement shall vest in Octagon immediately and shall remain vested whether this Agreement expires in normal course or is terminated for any reason.

(d)    Return of Octagon Property. Upon termination or separation of Employee's employment with Octagon, for any reason, Employee shall return all Octagon Property to Octagon. Accordingly, upon and after the termination of the Employment Period, Employee agrees upon request of Octagon to sign documentation prepared by Octagon that memorializes Octagon's right to Octagon Property and informs clients, vendors, consultants, payors, payees, and others of such fact and instructing that all fees and compensation that are Octagon Property shall be directed to Octagon.  If any such fees or compensation are directed to Employee or any entity with which Employee becomes associated, Employee shall ensure that neither Employee nor any affiliated entity deposits, cashes or otherwise negotiates such funds, but shall ensure that such funds are forwarded to Octagon (and endorsed over to Octagon if funds would not otherwise be negotiable by Octagon) within ten (10) business days of receipt.  Upon Octagon's request and during the three (3) year period following the Employment Period, Employee shall provide Octagon with true and correct copies of all agreements, invoices, checks or other financial records related to Octagon Property.

(e)    Reasonable Charges Relating to Return of Octagon Property. In the event that Octagon Property is not returned to Octagon, Octagon shall have the right to charge Employee for all reasonable damages, costs, attorneys' fees and other expenses incurred in recovering Octagon Property (including, without limitation, any fees/costs associated with initiating legal proceedings in connection therewith). In addition, Employee understands and agrees that Octagon has a right to seek any and all remedies afforded at law or in equity to it if Employee fails to comply with Employee's obligations to return any Octagon Property.

## 8.    Miscellaneous.

(a)    Severability. In the event any provision or part of this Agreement is declared void and unenforceable in whole or in part, this finding shall not affect the validity of the remainder of this Agreement, and the remaining terms shall continue in full force and effect.

(b)    Waiver.  The waiver by any party of any breach of this Agreement shall not operate as, or be construed as, a waiver of any subsequent breach of any provision of this Agreement.

(c)    Successors and Assigns.   This Agreement will inure to the benefit of the successors and assigns of Octagon. The obligations of Employee are personal, are not assignable, and may be performed only by Employee.

(d)    Entire Agreement.  This Agreement contains the entire understanding between Octagon and Employee as to the terms hereof, replaces any previous written or verbal understandings between them, and may not be changed except by written agreement executed by both Octagon and Employee.

(e)    Employee Opportunity to Obtain Legal Review.   Employee acknowledges that Employee has been afforded the opportunity to have this Agreement reviewed by legal counsel of Employee's choosing and at Employee's expense, and that by executing this Agreement, Employee further acknowledges that Employee has taken that opportunity or has knowingly waived the right to do so.

(f)    Notices.   All notices, claims, requests, demands, and other communications desired or required hereunder shall be made in writing and shall be deemed to have been duly given when received if mailed (registered or certified mail, postage prepaid, return receipt requested, or other express mail with confirmed delivery) and addressed to Employee at Employee's last known home address and to Octagon at 7950 Jones Branch Drive, Suite 700N, McLean, VA 22107, Attn: General Counsel.

(g)    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(h)    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, USA without regard to conflict of laws principles.

(i)    Provisions Surviving Termination of Agreement.   The provisions of this Agreement that shall survive termination of this Agreement are Sections 3(g), 4, 5, and 7 through 10.

## 9.    Arbitration Agreement.  For purposes of this Agreement the following Section 9 shall be defined as the "**Arbitration Agreement**." Octagon and Employee agree that any claim, dispute, or controversy (including, but not limited to, any and all claims of discrimination and harassment) which would otherwise require or allow resort to any court or other

governmental dispute resolution forum between Employee and Octagon (or Octagon's owners, directors, and officers, current and former employees and parties affiliated with its employee benefit and health plans or any parent, subsidiary or related company) (collectively, (the "**Octagon Parties**")) arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment by, or other association with, the Octagon Parties, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration pursuant to the Federal Arbitration Act ("**FAA**)".

The arbitration will be conducted in conformity with the procedures for arbitration contained in FAA as governed by the American Arbitration Association ("**AAA**"). All claims must be brought in a party's individual capacity, and not as a class member, or class or other type of representative, in any purported class, collective or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a class, collective, representative or private attorney general proceeding. A court, and not the arbitrator, shall decide whether any class, representative or multiparty claims may be sent to arbitration. If any claims are deemed not to be arbitrable by a court, while some claims are deemed arbitrable by such court, then the parties agree that the arbitrable claims will be sent to arbitration for resolution and the non-arbitrable claims will be severed and, if pending in court, will be stayed until the final resolution of the claims in arbitration.

Notwithstanding the foregoing, this Agreement does not affect or limit Employee's right to file an administrative charge with or to otherwise seek relief from, any government agency such as the Equal Employment Opportunity Commission or the National Labor Relations Board. Claims for state employment insurance benefits, workers' compensation benefits, or claims arising under the National Labor Relations Act shall not be subject to arbitration.

Employee understands by agreeing to this binding arbitration provision, both Employee and Octagon agree to arbitrate claims which they may have against each other and give up their rights to trial by jury on those claims.

Employee may opt-out of this Arbitration Agreement by delivering, within thirty (30) days of the date this Arbitration Agreement is signed, a completed and signed Opt-Out Form to Octagon at the following address:  Octagon, Inc., 7950 Jones Branch Drive, Suite 700N, McLean, Virginia 22107, Attn: Julie Kennedy.  An Opt-Out Form is attached.  If Employee does not timely deliver the Opt-Out Form, and if Employee accepts or continue his or her contractual relationship with Octagon after the expiration of the foregoing opt-out period, Employee will be deemed to have accepted and agreed to the terms of this Arbitration Agreement.

A party may apply to the courts of the Commonwealth of Virginia in the County of Fairfax or the United States District Court for the Eastern District of Virginia, Alexandria Division as set forth in Section 10 below, for interim, injunctive or conservatory relief, including without limitation a proceeding to compel arbitration.  If the Arbitration Agreement herein is determined by any court to be unenforceable, any further legal action must be filed only in courts of the Commonwealth of Virginia in the County of Fairfax or the United States District Court for the Eastern District of Virginia, Alexandria Division as set forth in Section 10 below.

**EMPLOYEE HEREBY ACKNOWLEDGES AND AGREES TO THE FOREGOING SECTION 9 ARBITRATION AGREEMENT:**

Employee Signature

10.    **Consent to Exclusive Jurisdiction**.  If Employee opts out of the Arbitration Agreement, then to the extent any disputes relate to, or arise from, this Agreement, all such disputes shall be brought only in the courts of the Commonwealth of Virginia in the County of Fairfax or the United States District Court for the Eastern District of Virginia, Alexandria Division.  The parties acknowledge, consent, and submit to the exclusive jurisdiction of, and venue in, the aforementioned courts for purposes of all such disputes.

*[Signature Page Follows]*



I HAVE READ AND FULLY UNDERSTAND AND ACCEPT ALL OF THE TERMS AND CONDITIONS SET FORTH ABOVE:

By: _____

Alexander Sohali

Date: **03/06/19**

ACCEPTED AND AGREED:

By: _____

Alastair Garland
Vice President, Octagon Tennis

Date: 3/12/19

By: _____

Julie Kennedy
Vice President, Talent

Date: 3/12/19

7950 Jones Branch Drive Suite 700N McLean VA 22107 USA
t (703) 905 3300  f (703) 905 4495  www.octagon.com

Part of Octagon Worldwide

## Opt-Out Arbitration Form

IF YOU DO NOT WISH TO BE BOUND BY THE ARBITRATION AGREEMENT, PLEASE COMPLETE AND RETURN THIS FORM.

This form must be completely filled out, signed by you, and returned to Julie Kennedy, VP Talent, with Octagon, Inc., 7950 Jones Branch Dr. Suite 700N, McLean, VA 22107, within thirty (30) days of the date you signed the Arbitration Agreement to be effective. If this form is not returned within the foregoing timeframe, you will not have another opportunity to exclude yourself from the terms of the Arbitration Agreement.

If you have questions about the exclusion process, please contact Julie Kennedy at Julie.kennedy@octagon.com or by mail to Octagon, Inc., 7950 Jones Branch Dr., Suite700N, McLean, VA 22107, Attn: Julie Kennedy.

I, _____ have read the Arbitration Agreement I signed on _____ and I elect NOT to receive the benefits of arbitration and to opt out of the Arbitration Agreement. I understand that mandatory arbitration will not apply to me. I waive my ability to participate in mandatory arbitration and I understand that my election is binding for the duration of my current employment agreement with Octagon. I understand that by signing and submitting this form, I will not be required to submit any disputes that I may have against the Octagon Parties to binding arbitration. Similarly, Octagon Parties will not be required to submit any disputes that it may have against me to binding arbitration.

Employee Signature:_____

Date: _____

To opt-out of the Arbitration Agreement, return this completed form no later than thirty (30) days after the date you signed the Arbitration Agreement to:

Octagon, Inc., 7950 Jones Branch Dr., Suite 700N, McLean, VA 22107, Attn: Julie Kennedy

If you do not deliver a completed and signed Opt-Out Arbitration Form within the required time period, you and Octagon will continue to be bound by the terms and conditions of the Arbitration Agreement.